UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| D.C. and N.K, individually, and <br> JRG HOLDINGS – BELLEVILLE, <br> LLC, an Illinois corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF COLLINSVILLE, <br> ILLINOIS, an Illinois <br> municipal corporation, <br><br> Defendant. | No. 3:09-cv-00026-GPM-DGW |

## **COMPLAINT**

I.  INTRODUCTION

1. This is an action for declaratory and injunctive relief and damages brought pursuant to the Fair Housing Act, 42 U.S.C. §3601, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794, *et seq.* Plaintiffs seek redress because the Defendant City of Collinsville, Illinois (hereinafter "the City") wrongfully denied zoning approval and refused to make a reasonable accommodation to Plaintiff JRG Holdings – Belleville, LLC (hereinafter "Plaintiff JRG Holdings"), to permit it to operate a permanent supported housing development within the City, known as the Mundloch St. Louis Road Development, including apartments for sixteen (16) persons with chronic mental illness, including Plaintiffs D.C. and N.K., in violation of the Plaintiffs' rights under the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

1

II.  JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343, 42 U.S.C. §1983, and 42 U.S.C. §3613. Appropriate declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court because all the parties are located in the Southern District of Illinois and the acts described herein took place within the Southern District of Illinois.

III. PARTIES

4. Plaintiffs D. C. and N. K. are adult persons who reside in Madison County, Illinois. They are each persons with chronic mental illness and are "handicapped" pursuant to 42 U.S.C. §3602(h) in the following respects:

    A. Plaintiff D. C. is a 57 yr. old male person who lives in the City of Granite City, Illinois. He is divorced, unemployed and homeless. He is a recovering alcoholic and has bipolar disorder.

    B. Plaintiff N. K. is a 45 yr. old female person who lives in the City of Granite City, Illinois. She is single and unemployed. She has a seizure disorder and is severely depressed with psychotic features. She is not able to live independently without significant support from others and is at risk of becoming homeless.

5. Plaintiff JRG Holdings is a corporation organized and existing under the laws of the State of Illinois. The principals of JRG Holdings are James Mundloch, Ryan Chaney and Gayle Frey.

6. The City of Collinsville, Illinois is a city within the Southern District of Illinois

which is organized under laws of the State of Illinois and is a body politic and corporate pursuant to 65 ILCS 5/2-3-8.

IV.     STATEMENT OF THE CASE

*Background - Madison County Sheltered Care Home Closure*

7.  The Madison County Sheltered Care Home is located in Edwardsville, Illinois. It currently serves more than twenty (20) residents, who are mentally ill, developmentally disabled, elderly, or who have a combination of these characteristics. It is licensed by the Illinois Department of Public Health as a long-term care facility. It provides residents with shelter, supervision, medication assistance, and assistance with activities of daily living.

8.  Since approximately June 2008, officials of the Madison County Board have planned to close the Madison County Sheltered Care Home. Notices of intent to close the Home were sent to each resident of the Home in June 2008, and a subsequent notice was sent on July 2008 announcing a closure date of October 17, 2008. The most recent closure notice to Sheltered Care Home residents from the Madison County Board was sent on December 8, 2008, announcing a new closure date for the Home of February 6, 2009.

9.  Plaintiff JRG Holdings agreed to partner with Chestnut Health Systems, a community mental health agency located in Granite City, Illinois, in a new residential development to serve low and moderate income persons, including persons who formerly resided at the Madison County Sheltered Care Home as well as other persons with mental illness from the community who need residential support. The intent was for Plaintiff JRG Holdings to purchase an apartment building with the assistance of a loan from Madison County and for Chestnut Health Systems to manage the property and operate a residential program for persons

with chronic mental illness. Initially Plaintiff JRG Holdings intended to purchase certain real estate located on Ramada Blvd. in Collinsville, Illinois. Later, based upon discussions and representations of City officials as more particularly described below, Plaintiff JRG Holdings obtained an option to purchase property on St. Louis Road in Collinsville known as the Westowne Apartments (hereinafter "the St. Louis Road Development") for the purpose of the supported housing program.

10. In order to provide for the housing needs of the soon-to-be-displaced residents of the Sheltered Care Home, the Madison County Board agreed to increase the tax for the Madison County Mental Health (708) Board in order to permit 708 Board funding for Chestnut's new residential program for persons with chronic mental illness. The County also agreed to provide funds in form of a loan commitment from Madison County Community Development to Plaintiff JRG Holdings for the purpose of assisting in the purchase of real estate to accommodate a residential program for persons with mental illness.

11. Plaintiff JRG Holdings or related entities currently owns apartment buildings in Fairview Heights and Belleville, Illinois, in which Chestnut Health Systems serves approximately forty (40) adults with chronic mental illness. Plaintiff JRG Holdings or related entities formerly owned apartment dwellings in Swansea and Pontoon Beach, Illinois, in which Chestnut Health Systems operates similar programs. Each of the apartment buildings has appreciated in value; there have been few if any complaints about residents to police, fire or other emergency services agencies; and, many persons with chronic mental illness have been able to live independently and successfully in a home of their choice for the first time in their lives.

4

*The Defendant's Zoning Scheme*

12. The Defendant City exercises zoning authority over land within its boundaries. The Defendant City's zoning ordinance is contained within the City of Collinsville Zoning Ordinance (hereinafter "the Regulations" or "these Regulations").

13. These Regulations, at Section 17.020, define "assisted living" as follows: "Multifamily dwelling units used or designed to be used by older persons, persons with disabilities or other persons needing or desiring assistance with day-to-day matters, but not including group homes, group housing, hospitals or convalescent care facilities. Typical uses include retirement communities in which housekeeping services, common dining facilities and recreational and social activities are offered to residents."

14. These Regulations also provide that so-called "P-R3" uses are permitted as Planned Uses within only two of the City's existing Zoning Districts, namely the "R-3" Multi-Family Residential District and the "B-2" Commercial District. At all times relevant herein, zoning officials of the City interpreted these Regulations to require Plaintiff JRG Holdings to seek approval from the City's Planning Commission and City Council in order to rezone the St. Louis Road premises as an assisted living facility under the "P-R3" use category.

*The Supported Housing Proposal*

15. In residential programs operated by Chestnut Health Systems, including the proposed St. Louis Road Development, persons with chronic mental illness include persons with depression, bipolar disorder and schizophrenia, among other major mental illnesses, and the illnesses of each person are so severe that they interfere with major life activities such as caring for self, learning or working.

16. Persons who may be selected for residence in a Chestnut Health Systems supported housing program come from a waiting list maintained by Chestnut. Membership on this list is based upon a screening process developed by Chestnut which identifies individuals in immediate need of a place to live who could live independently in their own dwelling units with daily support from trained staff.

17. Chestnut Health Systems is licensed by the Illinois Department of Human Services ("IDHS") and accredited by the Joint Commission on Accreditation of Healthcare Organizations. Dwellings owned by Plaintiff JRG Holdings and operated by Chestnut Health Systems as supported housing programs are regularly inspected by IDHS, and various other state agencies. No such dwellings have ever been found with a major deficiency in any inspection by any state or local agency.

18. The proposed St. Louis Road Development is a permanent supported housing program. It is intended to be developed at 814-820 St. Louis Road, Collinsville, Illinois, which is located in an "R-1A" District intended for use by single family dwellings according to the Regulations. The St. Louis Road apartment building, now known as the Westowne Apartments, is approximately 50 yrs. old. At all relevant times herein, the premises has operated as a non-conforming use, namely as 30-unit apartment building.

19. The St. Louis Road apartment building is well-suited for operation of Chestnut Health System's proposed supported housing program in that it has approximately 30 dwelling units, it is located on a Madison County Transit bus line, and it has amenities located within five-to-ten blocks, including doctor's offices and health clinics, laundromats, churches, convenience stores, services stations, restaurants and fast-food establishments

20.     Approximately sixteen (16) of the units at the St. Louis Road apartment building may be occupied by adult men and women with chronic mental illness selected by Chestnut Health Systems from its waiting list, including Plaintiffs D.C. and N.K. Both Plaintiffs D.C. and N. K. have been on the waiting list for at least six (6) months. If zoning approval is obtained for the St. Louis Road Development, Plaintiffs D. C. and N. K. will probably agree to move in to an individual apartment as soon as possible.

21.     All proposed residents of the St. Louis Road Development, including Plaintiffs D.C. and N. K., intend for this apartment dwelling to be their permanent home. None of these residents will be participants in any transitional or temporary living situation operated by Chestnut Health Systems or any other entity.

22.     All of the proposed residents, including Plaintiffs D. C. and N. K., will sign 1-yr. leases to rent apartments at the St. Louis Road Development. Some of the proposed residents are expected to have full or part-time jobs. Some of the proposed residents may be eligible for Social Security Disability benefits, Supplemental Security Insurance benefits, or other disability benefits. Some of the residents will own cars.

23.     Staff from Chestnut Health Systems will be housed within an apartment unit at the premises. One-to-three staff members will be assigned to the St. Louis Road Development on a 24-hr. per day basis. Staff assistance to the sixteen (16) residents in the Chestnut program will vary depending upon the needs of the residents, but some level of staff assistance will be necessary for each resident to live independently. Staff assistance is expected as follows:

a) Chestnut staff will facilitate residents' off-site contact with doctors, nurses and other treatment providers;

b) Some residents may receive one-on-one assistance from Chestnut staff for help with daily living skills, such as household management, money management, or medication administration;

c) Some residents will receive transportation assistance from staff to shop or access community services;

d) Most residents will participate in off-site mental health programs, such as the psychosocial rehabilitation program operated by Chestnut in Granite City, Illinois;

e) Some residents who experience psychiatric crises may receive telephone or outreach crisis counseling, or may be directed by staff to enter a psychiatric unit at the Crisis Residential Unit operated by Chestnut in Granite City, Illinois, or elsewhere in order to enable them to return to normal functioning with appropriate support at their homes as soon as possible.

24.     The remainder of the residents at the premises will be low and moderate income persons, including some of the present tenants who choose not to leave. Current tenants who vacate will be offered relocation assistance by the Madison County Community Development agency. Such assistance will include provision of comparable rental units, payment for moving expenses and payment of rental assistance.

25. The St. Louis Road Development is compatible with the other mixed land uses in the area. These include not only large and small single family dwellings but also numerous other apartment buildings as well as a liquor store, a gas station, an elementary school, several used car dealers, a tire repair shop, a bed and breakfast, a church and pre-school, several professional office buildings, a tavern, an art gallery, and a restaurant, among other businesses. The operation of Chestnut Health Systems within the St. Louis Road Development will not change the character of the neighborhood and will not be obvious or even visible from the outside. There will be nothing to indicate that any of the apartments are occupied by persons with disabilities.

*The Zoning Dispute*

26. In August 2008, Plaintiff JRG Holdings acquired an option to purchase a 17-unit apartment building located on Ramada Blvd. within the City of Collinsville for the purpose of partnering with Chestnut Health Systems for a new development to accommodate a significant number of persons who would be departing the Madison County Sheltered Care Home as well as other persons with chronic mental illness. The purchase price was $750,000. At that time Plaintiff JRG Holdings' loan commitment from the County was $960,000, which was sufficient to permit complete rehabilitation of the building without additional financing. The closing date for the purchase of the dwelling was in late August 2008.

27. The principals of Plaintiff PRG Holdings then met with officials of the Defendant City, including Community Development Director Paul Mann and Assistant Community Development Director Mitch Bair, to advise of their intentions. Within two weeks, the principals were advised by Mann and Bair that the Ramada Blvd. location was unacceptable to the City because another developer would soon begin construction of high-end condominium units in the immediate area of Ramada Blvd. and the presence of chronically mentally ill persons at this

location was opposed by many in the community.

28.     Officials from the City, including Mann, Bair, Mayor John Miller, and others, advised the principals of Plaintiff JRG Holdings that they would support the effort to develop permanent supported housing for persons with mental illness at a different location within the City. Shortly afterward, the principals of Plaintiff JRG Holdings located another apartment building in the City, the Westowne Apartments on St. Louis Road, and asked representatives of the both the City and Madison County whether this property was acceptable for the proposed development. The principals of Plaintiff JRG Holdings were advised by representatives of the City that this property was more suitable.

29.     The Westowne Apartments are less desirable for Plaintiff JRG Holdings because its return on investment may be significantly less. Chestnut Health Systems will only rent 17 of the 30 units. Plaintiff JRG Holdings expects that it may be difficult to rent all the remaining units due to stereotypic and discriminatory attitudes toward the mentally ill. In addition, property taxes at the proposed St. Louis Road Development are expected to be higher and it will be more expensive for Plaintiff JRG Holdings to maintain the larger building since it is in poorer condition than the Ramada Blvd. apartments. Finally, required rehabilitation of the St. Louis Road Development will cost as much as $350,000 and these costs will have to be financed solely by Plaintiff JRG Holdings.

30.     Nevertheless, Plaintiff JRG Holdings acquired an option to purchase the Westowne Apartments for the purpose of operating the St. Louis Road Development on or about September 23, 2008. The purchase price was $960,000. Plaintiff JRG Holdings received a $960,000 loan commitment from Madison County Community Development to assist with the purchase price. The term of the loan was 15 years, at 0% interest for the term of the loan. This was a "deferred

payment loan," meaning the Plaintiff PRG Holdings would not have to repay the loan until the end of the term. The loan commitment from the County was to remain in effect until Jan. 1, 2009, but Plaintiff JRG Holdings is informed and believes that this date may be extended. The County required zoning approval, receipt of necessary building permits, receipt of other sources of funds per the application for County funds, and Chestnut Health Systems involvement.

31. In September 2008, the principals of Plaintiff JRG Holdings were advised by City officials that an application for "P-R3" rezoning for the St. Louis Road Development was required by the City because Chestnut Health Systems intends to use one or two of the dwelling units for staff support of the residents. It was the City's interpretation of the Regulations that a proposed use as an "assisted living" facility required rezoning as a planned development.

32. Plaintiff JRG Holdings submitted its proposed rezoning application for preliminary review to City officials on or about Oct. 9, 2008. They were then advised by Mann and Bair that the application was fine and could be "fast-tracked" to the City Council for approval.

33. Plaintiff PRG Holdings filed its rezoning application with the City on or about October 18, 2008, requesting zoning approval to use a portion of the premises as a permanent supported housing program for persons with chronic mental illness.

34. A public hearing on Plaintiffs' rezoning application was held before the City's Planning Commission on November 20, 2008. At that time the Defendant City's Assistant Community Development Director Bair submitted a report but no recommendation concerning the proposed Development. Among other things the report indicated that so-called "bulk" requirement of the Regulations were unmet at the existing apartment building, specifically that setback and lot sizes were insufficient and that parking was deficient by approximately 32

spaces. The City's offer to "fast-track" the rezoning application was withdrawn.

35. Prior to the meeting, a representative of the Plaintiff JRG Holdings made a written request to the City's Planning Commission and City Council for a reasonable accommodation to the rules, policies, and practices of the City, including the Regulations, to allow the operation of the supported housing program. A copy of the request is attached hereto as Exhibit "A" and incorporated herein by reference. City Assistant Community Development Director Bair advised Plaintiffs' representative that he did not support this request for "immunity" from the City's zoning and would oppose this request.

36. Approximately 100 residents and neighbors of the St. Louis Avenue apartment building appeared at the foregoing meeting to complain about the proposed development. They presented a petition with approximately 250 names of objectors to the development. The complaints of the neighbors were irrational and based upon groundless fear of persons with disabilities, such as: a) the proposed residents would be alcoholics, drug addicts, kleptomaniacs and persons with "persuasions toward children;" b) neighbors feared for their lives and their children's lives and will be afraid to live in their houses or have to sell their homes if mentally ill persons lived nearby; c) the new use of the apartment building would depress their property values; and, d) the home was inconsistent with the long-term plan for development of the neighborhood. The statements of most objectors were followed by applause from the crowd. Several objectors specifically requested that zoning approval be denied because proposed residents should continue to live at the Madison County Sheltered Care Home. These objectors criticized the decision of the Madison County Board to send Sheltered Care Home residents to their neighborhood in Collinsville.

37. At the conclusion of the meeting, the City's Planning Commission voted 8-0 to

deny the rezoning application. The Commission recommended that the Plaintiffs' application for rezoning approval to the City Council be denied as inconsistent with the City's comprehensive plan, inconsistent with the Regulations, and negatively impacting the character of the neighborhood.

38. Pursuant to City's Regulations, its City Council has final authority on zoning matters and acts on and approves or denies all requests for "P-R3" approval and other zoning applications.

39. On December 8, 2008, the City Council voted unanimously against the application.

## COUNT ONE – FAIR HOUSING ACT

40. Plaintiffs reallege and incorporate herein by reference Paragraphs 1-39 herein.

41. The St. Louis Road Development includes a "dwelling" within the meaning of 42 U.S.C. §3602(b), and the proposed residents of the Development, including Plaintiffs D. C. and N. K., are "handicapped" within the meaning of 42 U.S.C. §3602(h).

42. The City's actions described above were intentional and taken with willful disregard for the Plaintiffs' rights.

43. Because the Collinsville City Council is vested with the final authority for zoning decisions, the Council's actions described above constitute the policy of the City.

44. The City's actions described above were taken under color of state law.

45. The City's actions in enacting and interpreting a zoning ordinance which does not permit persons with chronic mental illness to live in supported housing programs as described above within the City without zoning approval facially discriminates against handicapped persons, in violation of 42 U.S.C. §3604(f)(1).

46. The City's actions in rejecting the Ramada Blvd. site for the proposed

development, in denying Plaintiff JRG Holdings' application for rezoning approval, and in refusing to grant a reasonable accommodation for the St. Louis Road Development has a greater adverse impact upon persons with handicaps than other persons and prevents some persons with handicaps from living in homes of their choice within the City of Collinsville, in violation of 42 U.S.C. §3604(f)(1).

47. By denying Plaintiff JRG Holdings' application for rezoning approval and refusing to grant its request for a reasonable accommodation to permit the operation of the St. Louis Road Development, the City refused to make reasonable accommodations to its rules, policies, and practices, which accommodations are necessary to afford Plaintiffs and other persons with handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §3604(f)(3)(B). The accommodations requested would not have imposed an undue administrative burden or expense upon the City and would not have resulted in a fundamental alteration of the City's Regulations, since the development is compatible with the current residential character of the neighborhood.

48. The City's actions described above coerced, intimidated, threatened or interfered with Plaintiffs in the exercise or enjoyment of, or on account of its having exercised or enjoyed, or on account of its having aided or encouraged others in the exercise or enjoyment of, the rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. §3617.

49    Plaintiffs are aggrieved persons, as defined in 42 U.S.C. §3602(i), who have suffered, or may have suffered, economic loss, emotional distress, and loss of their civil rights as a result of the City's actions described above.

WHEREFORE, Plaintiffs pray that this Court:

A.    Declare that enactment of the Regulations by the City which prohibit a supported

housing development for persons with handicaps from locating in the same neighborhood as other apartments and single-family residences, and the refusal by the City to either issue rezoning approval or grant a reasonable accommodation permitting the operation of the St. Louis Road Development for persons with handicaps unlawfully discriminates against the Plaintiffs and violates the Fair Housing Act;

B. Grant a preliminary and permanent injunction enjoining the City to grant immediate zoning approval to Plaintiff JRG Holdings, permitting it to operate a supported housing development for sixteen (16) persons or less at 814-820 St. Louis Road, Collinsville, Illinois, in partnership with Chestnut Health Systems, and enjoining the City from initiating any enforcement action under the Regulations, including but not limited to any prosecution or imposition of any fines or penalties against the Plaintiffs, during the pendency of this action;

C. Award Plaintiffs such damages as would fully compensate them for their injuries caused by the City's discriminatory housing practices;

D. Award Plaintiffs their costs, expenses and reasonable attorney's fees;

E. Grant any additional relief as the Court deems just and proper.

## COUNT TWO – AMERICANS WITH DISABILITIES ACT

50. Plaintiffs reaffirm and reallege paragraphs 1-49 of this Complaint.

51. Plaintiffs D. C. and N. K. are "qualified person[s] with a disability" pursuant to 42 U.S.C. §12131(2).

52. The City is a "public entity" pursuant to 42 U.S.C. §12131(1).

53. The City's zoning activities, including the enactment the Regulations, and any administrative processes, hearings, findings and recommendations by either its Community Development Director or Assistant Director or its Planning Commission or decisions by its City

Council are "services, programs or activities" of a public entity pursuant to 42 U.S.C. §12132.

54. The City's actions described above excluded Plaintiffs from participation in, denied Plaintiffs the benefits of, and subjected Plaintiffs to discrimination in the provision of its services, programs or activities, in violation of 42 U.S.C. §12132.

55. Plaintiffs are "person[s] alleging discrimination on the basis of disability" pursuant to 42 U.S.C. §12133, who have suffered, or may have suffered, injury by the actions of the City described above.

WHEREFORE, Plaintiffs pray that this Court:

A. Declare that enactment of a zoning ordinance by the City which prohibits a supported living development for persons with handicaps from locating in the same neighborhood as other apartments and single-family residences, and refusal of the City to either issue rezoning approval or grant a reasonable accommodation permitting the operation of the St. Louis Avenue Development for persons with chronic mental illness unlawfully discriminates against the Plaintiffs and violates the Americans with Disabilities Act;

B. Grant a preliminary and permanent injunction enjoining the City to grant immediate zoning approval to Plaintiff JRG Holdings, permitting it to operate a supported housing development for sixteen (16) persons or less at 814-820 St. Louis Road, Collinsville, Illinois, and enjoining the City from initiating any enforcement action under the Regulations, including but not limited to any prosecution or imposition of any fines or penalties against the Plaintiffs, during the pendency of this action;

C. Award Plaintiffs such damages as would fully compensate them for their injuries caused by the City's discriminatory housing practices;

D. Award Plaintiffs their costs, expenses and reasonable attorney's fees;

E. Grant any additional relief as the Court deems just and proper.

COUNT THREE – SECTION 504 OF THE REHABILITATION ACT

56. Plaintiffs reaffirm and reallege paragraphs 1-55 of this Complaint.

57. On information and belief, the City is a recipient of Federal financial assistance.

58. Plaintiffs D. C. and N. K. are "otherwise qualified individual[s] with a disability" pursuant to 29 U.S.C. §794(a).

59. The City's zoning activities, including the enactment of the Regulations, and any administrative processes, hearings, findings and recommendations by either its Community Development Director or Assistant Director or its Planning Commission or decisions by its City Council, are "programs or activities" of a unit of local government pursuant to 29 U.S.C. §794(b)(1)(A).

60. The City's actions described above excluded Plaintiffs from participation in, denied them the benefits of, and subjected them to discrimination under a program or activity of the City solely on account of the disability of the prospective residents, in violation of 29 U.S.C. §794.

61. The Plaintiffs are "persons aggrieved" pursuant to 29 U.S.C. §794a(2) who have suffered, or may have suffered, injury by the actions of the City described above.

WHEREFORE, Plaintiffs pray that this Court:

A. Declare that enactment of the Regulations by the City which prohibit a supported housing development for persons with disabilities from locating in the same neighborhood as other apartments and single-family residences, and refusal of the City to either issue rezoning approval or grant a reasonable accommodation permitting the operation of the St. Louis Avenue Development for persons with chronic mental illness unlawfully discriminates against the

Plaintiffs and violates Section 504 of the Rehabilitation Act, as amended;

B. Grant a preliminary and permanent injunction enjoining the City to grant zoning approval to Plaintiff JRG Holdings, permitting it to operate a supported housing development for sixteen (16) persons or less at 814-820 St. Louis Road, Collinsville, Illinois, and enjoining the City from initiating any enforcement action under the Regulations, including but not limited to any prosecution or imposition of any fines or penalties against the Plaintiffs, during the pendency of this action;

C. Award Plaintiffs such damages as would fully compensate them for their injuries caused by the City's discriminatory housing practices;

D. Award Plaintiffs their costs, expenses and reasonable attorney's fees;

E. Grant any additional relief as the Court deems just and proper.

## COUNT IV – PRELIMINARY AND PERMANENT INJUNCTION

62. Plaintiffs reaffirm and reallege paragraphs 1-61 of this Complaint.

63. Plaintiffs have no adequate remedy at law to prevent the City from indefinitely frustrating the opening and operation of the St. Louis Road Development. The nature of the harm is such that no plain, adequate or complete remedy at law exists to prevent or redress the actual and prospective injury which is and will be suffered by Plaintiffs if an injunction is not issued.

64. Plaintiffs will suffer serious and irreparable injury if the City is not immediately enjoined from refusing to permit the opening and operation of the St. Louis Road Development. Loss of the St. Louis Road Development constitutes irreparable harm resulting in significant economic losses for Plaintiff JRG Holdings (including the $960,000 loan at 0% interest) and deprivations affecting the health, safety and welfare of the individual Plaintiffs concerned,

18

including Plaintiffs D. C. and N. K. Plaintiffs D. C. and N. K. may become homeless or remain homeless if the St. Louis Road Development is not opened within a short period of time.

65.  No substantial harm would inure to the City if an injunction were to be granted. Furthermore, the balance of harm to the Plaintiffs far outweighs any inconvenience to the City to comply with the law and permit the opening and operation of the St. Louis Road Development.

66.  The public interest in providing for the well-being of the chronic mentally ill strongly favors the granting of preliminary injunctive relief because the City's continued refusal to grant reasonable accommodations and to permit the opening and operation of the St. Louis Road Development will result in a substantial and detrimental impact to Plaintiffs as well as other chronic mentally ill individuals in the area.

67.  Plaintiffs are likely to prevail on the merits of this cause for the reasons stated in their Complaint for violations under the federal Fair Housing Act, the Americans with Disabilities Act and the Rehabilitation Act.

68.  Plaintiffs D. C. and N. K. have limited financial resources and are unable to furnish the usual bond in this cause.

WHEREFORE, Plaintiffs pray that this Court find, order and adjudge as follows:

A) That the City, its agents, employees and servants, be enjoined and restrained, without bond or upon nominal bond, from refusing to issue rezoning approval or grant a reasonable accommodation permitting the operation of the St. Louis Avenue Development for persons with chronic mental illness;

B) Enter a judgment in favor of Plaintiffs and against the City for Plaintiffs' costs, expenses, and reasonable attorneys' fees;

C) Grant any additional relief as the Court deems just and proper.

/s/ Thomas E. Kennedy, III
One of the Plaintiffs' Attorneys

Thomas E. Kennedy, III, Lead Counsel
Deborah S. Greider
Law Offices of Thomas E. Kennedy, III, L.C.
230 S. Bemiston, Ste. 800
St. Louis, MO 63105
(314) 872-9041
(314) 872-9043 fax